IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     PLAINTIFF, | ) |
| | ) |
| v. | )   CASE NO.: 2:06-cv-116-MEF |
| | ) |
| FIVE HUNDRED FORTY-THREE | ) |
| THOUSAND ONE HUNDRED NINETY | ) (WO - Not Recommended for Publication) |
| DOLLARS ($543,190.00) IN UNITED | ) |
| STATES CURRENCY, | ) |
| | ) |
|     DEFENDANT. | ) |

## MEMORANDUM OPINION AND ORDER

In this action for Forfeiture *In Rem* pursuant to Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, the United States seeks to forfeit and condemn $543,190 in United States currency seized during a traffic stop. Enrique Alcaraz-Barajas ("Alcaraz-Barajas"), the man from whom this sum was seized, opposes the seizure and asserts, what he contends is a lawful claim to the money. This cause is before the Court on the United States of America's Second Motion for Summary Judgment (Doc. # 53). The United States contends that there is no genuine issue of material fact, and therefore, it is entitled to summary judgment as a matter of law because Alcaraz-Barajas lacks Article III standing to challenge the forfeiture. Alcaraz-Barajas opposes the United States' motion. After careful consideration of the arguments of counsel, the relevant case law and the record as a whole, the Court finds that the motion for summary judgment is due to be DENIED.

**JURISDICTION AND VENUE**

This Court has subject matter jurisdiction over the lawsuit pursuant to 28 U.S.C. §§ 1345 and 1355.[1] Venue is proper in this district pursuant to 28 U.S.C. § 1395 and 21 U.S.C. § 881(j) because the act or omissions giving rise to the forfeiture occurred in this district and the property is located within this district.

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate

---

[1] Pursuant to 28 U.S.C. § 1345, "the [federal] district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States . . . " In addition, 28 U.S.C. § 1355(a) provides that "the [federal] district courts shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress, except matters within the jurisdiction of the Court of International Trade under section 1582 of this title."

2

burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. *To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (emphasis added). A plaintiff must present evidence demonstrating that he can establish the basic elements of his claim. *Celotex,* 477 U.S. at 322. A court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## FACTS AND PROCEDURAL HISTORY

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following relevant facts:

On August 29, 2005 an Alabama State Trooper seized $543,190 in U.S. Currency from Alcaraz-Barajas during a traffic stop in Montgomery, Alabama. As a result of an

3

immigration check, the Alabama State Trooper discovered that Alcaraz-Barajas had never been lawfully admitted into the United States. The Alabama State Trooper arrested Alcaraz-Barajas and took him into custody.

A grand jury indicted Alcaraz-Barajas on a charge that he falsely and willfully represented himself to be a citizen of the United States in violation of 18 U.S.C. § 911. Jerome Carter ("Carter") was retained to serve as counsel for Alcaraz-Barajas in his criminal case. On November 3, 2005, Alcaraz-Barajas entered into a plea agreement with the United States and pled guilty to the sole charge against him. As part of this plea agreement, Alcaraz-Barajas agreed to submit to federal immigration authorities for deportation. On January 20, 2006, Alcaraz-Barajas was sentenced to time served for this offense. Alcaraz-Barajas was deported on April 4, 2006.

During the time he was being held in custody in Montgomery, Alabama, Alcaraz-Barajas submitted two claims with the Drug Enforcement Administration ("DEA").[2] On December 30, 2005, the DEA received a document entitled "Notice of Claim of Mr. Enrique Alcaraz-Barajas." This claim was delivered to the DEA by Carter on behalf of Alcaraz-Barajas. Alcaraz-Barajas' signature[3] on the document, which was dated December 29, 2005, is notarized. The Notice of Claim includes references to: 1) the DEA asset ID number

---

[2] While it is somewhat peculiar that Alcaraz-Barajas filed two claims in such a short period of time through two different attorneys, there is no evidence before the Court that Alcaraz-Barajas has disavowed either claim.

[3] The signature "Enrique Alcaraz-B" appears above a line under which is typed "Enrique Alcaraz-Barajas."

4

assigned to the August 29, 2005 seizure of the currency; 2) the amount of the funds seized; 3) the place of the seizure; and 4) the date of the seizure. It indicates that Alcaraz-Barajas was both the owner of the seized money and the person from whom it was seized. In this Notice of Claim, Alcaraz-Barajas states the following:

> Comes Now **ENRIQUE ALCARAZ-BARAJAS** and files this notice of claim on seized U.S. Currency in the above referenced matter and states the claim as follows:
> That late July 2005, I noticed a black plastic garbage bag near a pond outside a Hampton Inn in Tampa, Florida. Believing it to be abandoned, I moved the bag to some bushes outside the hotel. The next day, I looked inside to find bundles of U.S. currency. I made arrangements to secure the money in safe deposit boxes at a Tampa bank.
> The money was later seized by Alabama State Troopers after a traffic stop in Montgomery, Alabama. When asked about the money I explained to the officers that I found the money. Upon additional interrogation, I was charged with impersonating a U.S. citizen. A complete search of the vehicle was completed without incident.
> I did not file a report with the local police or attempt to locate the owner of the lost money. I was unsure of the process of staking a claim in relation to the currency, but would have if I had known there was a process for doing so.
> I now, under oath and in fear of perjury, claim my interest in the money as finder of lost currency. I will waive any interest to the true and rightful owner should one come forward with proof of a superior claim.

Doc. 54-5 at Ex. A-16.

In an affidavit dated November 7, 2007 ,[4] and recently submitted to the Court,[5]

---

[4] Although Alcaraz-Barajas was deported, his affidavit dated November 7, 2007 purports to have been executed in Orange County, California.

[5] Alcaraz-Barajas submitted the November 7, 2007 affidavit as part of his Evidentiary Submission in Support of Claimant's Second Motion for Summary Judgment and Claimant's Motion to Suppress (Doc. # 73). Technically speaking, one might argue that the November 7, 2007 affidavit is not properly before the Court for consideration in conjunction with the United States of America's Second Motion for Summary Judgment (Doc. # 53). Such an

5

Alcaraz-Barajas contends that he signed the claim form presented to him by Carter without reading it. (Doc. # 73-2). He also claims that he lied to the police about having found the money and in fact he earned the money owning, operating and selling hair businesses over a thirty year period during which he was in this country illegally. *Id.* Alcaraz-Barajas contends that his signature on the affidavit was not properly notarized and that he signed the claim only to get his money back. *Id.* He contends that he did not authorize Carter to file the document in this forfeiture case. *Id.*

On January 3, 2006, the DEA received a second claim for seized property which purported to be signed by Alcaraz-Barajas and which was filed through the attorney who is now counsel of record for Alcaraz-Barajas in this case, Bruce Maddox ("Maddox"). This Claim is dated December 22, 2005. It refers to the same DEA asset ID number as the Notice of Claim dated December 29, 2005. The December 22, 2005 Claim states:

> Before me the undersigned authority came Enriqu [sic] Alcaraz-Barajas, who under oath gives the following statement:
>
> 1. My name is Enriqu [sic] Alcaraz-Barajas. I make this claim pursuant to Rule C (6) of the Supplemental Rules for Certain

---

argument is a tempting one to approve where as here Alcaraz-Barajas has presented no argument in opposition to the United States of America's Second Motion for Summary Judgment (Doc. # 53) based on the testimony contained in the November 7, 2007 affidavit and where Alcaraz-Barajas was ordered to submit any opposition to the United States of America's Second Motion for Summary Judgment (Doc. # 53) by no later than September 18, 2007 (this date was a later date than originally ordered because the Court granted a three-week extension of time to Alcaraz-Barajas). Nevertheless, the Court is reluctant to ignore sworn testimony properly before it on another pending motion which bears so directly on the issue presented by United States of America's Second Motion for Summary Judgment (Doc. # 53).

> Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, for any interest in **$543,190 U.S. Currency,** Identification Number **05-DEA-456576**, made subject of this action for the forfeiture pursuant to Title 18, Unites [sic] States Code (U.S.C.) Section 983(a)(2), and/or Title 21, United States code [sic] (U.S.C.) Section 881 (a)(6) and/or Title 28, United States Code (U.S.C.) Sections 1345 and 1355.
> 2. On the date of seizure a total of **$543,190 U.S. Currency** was taken, which I hereby claim.
> 3. I am entitled to the lawful possession of said property, because I lawfully possessed said property at the time of seizure and I lawfully own an interest in same.

Doc. 54-5 at Ex. A-18. This document bears Alcaraz-Barajas' signature[6] which, according to the document, was notarized in Montgomery, Alabama on December 22, 2005.

On February 7, 2006, the United States Attorney's Office for the Middle District of Alabama filed a Verified Complaint for Forfeiture in Rem seeking to forfeit and condemn to the use and benefit of the United States of America $543,190 in United States currency alleged to have been seized from Alcaraz-Barajas on August 29, 2005, for violations of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* On February 27, 2006, this court entered an Order for Warrant for Arrest of Property and ordered that the Government serve a copy of the Warrant, Summons, and Verified Complaint for Forfeiture in Rem on all persons known or thought to have an interest in or right against the currency.

On May 12, 2006, Maddox filed a notice of appearance (Doc. # 6) as counsel of

---

[6] The signature appears to say "Enrique Alcáraz." It appears above a line under which is typed "Enriqu Alcaraz-Barajas."

7

record in this action. On that same date, Alcaraz-Barajas filed a Claim (Doc. # 7).[7] While somewhat more abbreviated, the substance of the May 12, 2006 Claim is essentially the same as that of the December 22, 2005 Claim: namely, that Alcaraz-Barajas is entitled to the lawful possession of the currency because he lawfully possessed it at the time of the seizure and because he lawfully owns it. On June 1, 2006, Alcaraz-Barajas filed an Answer (Doc. # 11) and a Motion to Dismiss (Doc. # 10), which this Court denied.

Currently pending before the Court are the following motions: (1) the United States of America's Second Motion for Summary Judgment (Doc. # 53) which was filed on August 14, 2007; (2) the Motion to Strike from Consideration on Government's Second Motion for Summary Judgment (Doc. # 61) filed on September 18, 2007 by Alcaraz-Barajas; and (3) Claimant's Second Motion for Summary Judgment (Doc. # 70) filed on October 5, 2007.

## DISCUSSION

The dispositive issue presented to the Court by the United States of America's Second Motion for Summary Judgment (Doc. # 53) is a narrow one: Does Alcaraz-Barajas possess Article III standing to contest the forfeiture of the seized United States currency?

The civil forfeiture statute invoked by the United States in this case operates to allow a court to declare any property which is involved in certain types of illegal transactions to be forfeitable to the government. *See United States v. $557,933.89*, 287 F.3d 66, 77 (2nd Cir.

---

[7] The Claim was signed by "Enrique Alcaraz-B" before a Notary at large for the State of California on May 2, 2006, after Alcaraz-Barajas had been deported. The Claim does not indicate where the document was signed.

2002). The justification for such a law is that such property is either the proceeds of illegal transactions or somehow being used to facilitate illegal transactions. *Id*. In an action such as this one, the government is the plaintiff and the property is the defendant. *Id*. at 79. It is the government's right to forfeiture that is the sole cause of action adjudicated. *Id*. If the government fails to meet its burden of proof, a person with a proper claim to the defendant property may take the property without presenting any evidence. *Id*. "The function of standing in a forfeiture action is therefore truly threshold only - to ensure that the government is put to its proof only where someone with a legitimate interest contests the forfeiture." *Id*. The Eleventh Circuit Court of Appeals put it this way,

> [i]t is well established that in order to contest a forfeiture, a claimant must first demonstrate a sufficient interest in the property to give him Article III standing; otherwise, there is no case or controversy, in the constitutional sense, capable of adjudication in the federal courts.

*United States v. $38,000 in U.S. Currency*, 816 F.2d 1538, 1543 (11th Cir. 1987) (citations omitted). Like the Second Circuit, the Eleventh Circuit has specifically held that Article III standing is a "threshold issue" in a forfeiture case. *Id*. If a claimant does not have Article III standing, then the court lacks jurisdiction to consider his claim, including any challenges he has to the events relating to the seizure of the property at issue. *Id*. Thus, Eleventh Circuit precedent requires this Court to address whether Alcaraz-Barajas has standing before addressing whether the seizure of the currency was lawful.[8]  *See, e.g., United States v.*

---

[8] Alcaraz-Barajas cites no legal authority for his contention that the issue of standing is to be determined after determining whether the money is appropriately before the Court.

*$38,000 in U.S. Currency*, 816 F.2d at 1543; *United States v. Five Hundred Thousand Dollars*, 730 F.2d 1437, 1439 (11th Cir. 1984); *United States v. Three Hundred Sixty Four Thousand Nine Hundred Sixty Dollars*, 661 F.2d 319, 326 (5th Cir. Unit B Nov. 13, 1981).[9]

Standing is a question of law for the court to decide; it is not a question of law for the jury. *United States v. $557,933.89,* 287 F.3d at 78. Alcaraz-Barajas' unsupported assertion that the standing issue is one which a jury must resolve is incorrect.

Importantly, it is the claimant's burden to establish standing. *United States v. $38,000 in U.S. Currency*, 816 F.2d 1543 at n.11. The burden on the claimant is not a heavy one. The claimant must establish that he has a sufficient ownership interest in the property subject to forfeiture to create a case or controversy to confer Article III standing. *See, e.g., Via Mat Int'l S. Am. Ltd v. United States*, 446 F.3d 1258, 1262-63 (11th Cir. 2006) (the heart of Article III standing is the existence of an injury or economic harm to a party with an interest in the seized property); *United States v. $38,000 in U.S. Currency*, 816 F.2d at 1544 (owner of currency and bailee of currency had Article III standing to challenge forfeiture). Unexplained "naked possession" of cash does not rise to the level of a possessory interest required to establish Article III standing to attack a forfeiture proceeding. *See, e.g., United States v. $557,933.89*, 287 F.3d 66, 79 n.10 (2nd Cir. 2002); *United States v. $321, 470 in*

---

Similarly, he cites no legal authority for his contention that the Government must prove that forfeiture is justified before attacking his standing. The Court finds these contentions wholly inconsistent with binding precedent from the Eleventh Circuit Court of Appeals.

[9] In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir. 1982), the Eleventh Circuit adopted as binding precedent all decisions of Unit B of the former Fifth Circuit handed down after 30 September, 1981.

*U.S. Currency*, 874 F.2d 298, 305 (5th Cir. 1989); *Untied States v. One Hundred Sixty-Five Thousand Five Hundred Eighty Dollars in U.S. Currency*, 502 F. Supp. 2d 114, 122 (D. Me. 2007); *United States v. $1,189,466.00 in U.S. Currency*, No. Civ. A. 1:06-cv-33GE, 2006 WL 2228939 at *2 (N.D. Ga. Aug. 2, 2006); *United States v. $746,198 in U.S. Currency*, 299 F. Supp. 2d 923, 928-29 (S.D. Iowa 2004).

In light of Alcaraz-Barajas' most recent affidavit, the Court must find that there exists a genuine issue as to certain material facts: namely, how the money came into Alcaraz-Barajas possession. Alcaraz-Barajas has given conflicting sworn statements regarding how the money came into his possession. The Court cannot make the requisite credibility determination on the basis of the record before it alone. However, because standing is a threshold issue and a matter for the Court to decide itself, the Court must conduct an evidentiary hearing on this issue before addressing any other issues before it. At this evidentiary hearing the parties are expected to offer admissible evidence establishing how Alcaraz-Barajas came to possess the defendant property. After the evidentiary hearing, the Court will entertain argument based on applicable legal authorities as to whether Alcaraz-Barajas has presented a credible and legally sufficient basis for Article III standing to pursue his claim to the defendant property.

**CONCLUSION**

For the foregoing reasons, it is hereby ORDERED as follows:

(1) The United States of America's Second Motion for Summary Judgment (Doc. # 53) is DENIED.

11

(2) The Motion to Strike from Consideration on Government's Second Motion for Summary Judgment (Doc. # 61) filed on September 18, 2007 by Alcaraz-Barajas is DENIED as MOOT. This motion seeks to strike portions of the Verified Complaint and other information that this Court did not consider in deciding the Government's Second Motion for Summary Judgment.

(3) Claimant's Second Motion for Summary Judgment (Doc. # 70) filed on October 5, 2007 is DENIED. Should this Court determine that Alcaraz-Barajas has standing to make a claim in this case, it will enter a new briefing schedule which will allow all parties a subsequent opportunity to submit dispositive motions.

(4) The pretrial and the trial scheduled in this matter are CANCELLED.

(5) This cause is set for an evidentiary hearing on whether Alcaraz-Barajas has Article III standing to assert a claim in this case. Said hearing will commence on January 29, 2008 at 10:00 a.m. in the United States Courthouse, One Church Street, Courtroom 2A, Montgomery, Alabama.

DONE this the 26th day of November, 2007.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE